of David Joseph Wincheski v. Harry Wilson and Mr. Somatic. I had two choices and I picked the wrong one. That's okay, Your Honor. That happens a lot. Mr. Somatic, you may go forward for the count of one. Thank you, Your Honor. Attorney General Wilson, I here on behalf of the appellants, Harry Wilson and the Attorney General of the State of Pasadena, Your Honor, the district court officer, go ahead. Are you reserving time for rebuttal? Yes, Your Honor. Five minutes, I would like to reserve, please. All right, very well granted. If I may just start things off, Mr. Somatic, probably by stating the obvious or what I think is the obvious from the briefing. You have essentially conceded that the Commonwealth has waived the arguments with respect to what I would call the merits here, and that is unreasonable application. And therefore, if you are to win, you must prevail on the position that equitable tolling was improperly applied here by the magistrate judge or if not on that ground, that there was procedural default by Mr. Winchinski in the court of common pleas. Is that a correct statement of your position? That is correct, Your Honor. Having reviewed the opinion of the district court, I do not feel that I can make a compelling argument that that court had erred. Therefore, I felt that the procedural questions were perhaps more pertinent. They were perhaps more open to dispute on this matter. Obviously, the district court granted Mr. Winchinski's assassin period of equitable tolling, excusing 2,359 out of 2,699 days of delay with the discovery of this evidence and the filing of his habeas petition. We submit that that was an error. Equitable tolling is obviously a rare remedy to be granted only under extraordinary circumstances. Is it extraordinary that the state court, the paper 2 court, looked at this and said, oh, well, you're not in a position to move forward here because of the pending habeas matter or dismissing? No, Your Honor. Unfortunately, we wouldn't be here except for the fact that courts do occasionally make mistakes. May I ask you, though, is that in the record? Somehow, I've not found the PCRA 2 court's opinion. Is that in an appendix? I think that they're separate appendices. Your Honor, that's actually a good question. Off the top of my head, I'm drawing a blank. Well, whether it's good or not, it seems to me it's a rather important question because just what the Court of Common Pleas said in its disposition of the PCRA 2 petition is fundamental to both sides' position here on extraordinary circumstances, right? Well, Your Honor, I think that that is correct. However, it's just sort of been accepted throughout these proceedings that they told him that we can't go forward because of a federal action pending. That was my follow-up question. Effectively, there is not a dispute between you and the petitioner, is that right? And effectively, you have agreed that the Common Pleas judge said what in that disposition? He said that the PCRA matter could not proceed due to federal action. I can't speak for Mr. Geer, but I don't think that issue is in dispute. It could as well. And there were other courts that held that as well, right? Excuse me, sir? There were other Pennsylvania courts that initially held that as well? I believe there were a couple at the trial court level. The PCRA court also handled its trial court level, or the initial PCRA petition, excuse me. However, Pennsylvania Appellate Authority seems to be clear that there was no reciprocal tolling of PCRA time due to federal actions. There would be a federal action in the PCRA proceeding. Well, 2020 in hindsight, right, Mr. Smagg? But in the moment, if there's an unsettled law, even if it's at the trial court level, is it in fact an extraordinary circumstance to hold a petitioner to the consequences of the state court's error? You're going to think that the trial court's occasional error, and it's mandated throughout the proceedings. They don't go to jail for the rest of their life on the error. The petitioner stays in jail for the rest of their life. And beyond that, is this simply a matter of unsettled law, or, and again, I wish I had in the record exactly what it was the common peace court judge said, but was there something in the nature of a directive or an instruction from the common peace court judge to Mr. Manchinsky as to what he could or could not do in light of the pendency of the federal habeas? Well, Your Honor, given the state of the law at the time, even if that were to have occurred, I don't know that that would be dispositive. I don't know if it would be dispositive, but it's a lot different, isn't it? I mean, isn't it fundamentally different for the law simply to be unsettled, and perhaps for the court to have recited that fact or acknowledged that fact, as opposed to having the judge effectively declare or even instruct the petitioner just what it is he can or cannot do in terms of his reliance? Well, Your Honor, in no other context or very few other contexts in habeas per se would it be acceptable for a petitioner to simply take the word of a trial of a court and say, okay, there is an obligation to... Supposing, and I'm sure this is not the case, but just to pose the hypothetical, supposing the order from the judge says, all your rights are preserved, you just have to wait until your habeas is resolved. Does not a petitioner have a right to rely on that? I can see where one would be tempted to rely on that, but at the same time, that's contrary to the law of higher courts in Pennsylvania. Isn't that the implication of what occurred here? I'm sorry, Your Honor. The hypothetical declaration that Judge Rakoff just stated, isn't that the implication of what the Court of Common Peace judge here did in PCRA 2? Well, I'm not sure that it is, Your Honor, given the fact that even before any word was entered, PCRA 2 court entered a notice of intention to dismiss. That was unchallenged. At that point, there could have been no reliance. Mr. Machinsky should have clearly said, oh, wait a minute, this is incorrect. I can still proceed with this PCRA even while my federal relationship is pending. He didn't do it. Just perhaps to confirm what may be obvious to others, but I want to make sure that given the position that I hear you articulating and the questions and the answers you've given to our questions, that your contention that Machinsky's failure to appeal from the dismissal of the PCRA 2 court implicates the extraordinary circumstances pronged of the test. Is that correct? We've got reasonable diligence. We've got extraordinary circumstances. I acknowledge that there's some crossover perhaps among the two, but I'm assuming that it's extraordinary circumstances that we've really been focusing on here. Well, I think that reasonable diligence is also a focus as well. Well, how? I mean, doesn't the extraordinary circumstance or circumstances really form the predicate for some delay? And therefore, it becomes a separate inquiry for us to determine whether there has been, and I emphasize, reasonable diligence taken by the petitioner after the occurrence of that extraordinary circumstance. Well, Your Honor, I think that hinges on whether or not a mistake by trial court can be considered extraordinary. And unfortunately, I'm not sure that it can. These things happen. And at the same time, somebody who's a victim of an incorrect decision, so to speak, should reasonably be expected to seek relief. Boy, that's a really difficult thing to explain, not only to a petitioner, but to try to somehow justify jurisprudentially, isn't it? I mean, given the concession that you and the Attorney General have made here, and I credit you greatly for doing that in staking out your position, but it seems to me that leaves us with a very unsatisfactory result, to say the least. Your Honor, I can see how you can view it that way. I think it is somewhat ambiguous. It's not ambiguous in the sense that essentially the Commonwealth has conceded, yes, what happened here was wrong, but too bad because you relied on our state court judges to actually give you the straight answer on whether or not you could proceed or not. That's a difficult thing to feel comfortable with, wouldn't you agree? Put 10 more minutes on the clock, if you would, please. I have a, and you may want to check me on this, but I think the site where this is in the court below, the second incorrect decision is at the Western District's case number 07-1712, document number 2110, if I'm correct. At that place in the lower court record, excuse me, the district court's record, you'll find what the judge in the second Pickard decision said, and if I'm correct about that, what the judge said is, in effect, I'm giving you the chance, I'm giving you the chance, Mr. Munshinsky, to file something under Pennsylvania Rule 1507A to explain why you shouldn't have your case dismissed because the habeas is pending. And there was no response from Mr. Munshinsky's lawyer at that point. Does that make them, should that change our calculus if it was not just missing an appeal but missing a chance to respond to the Pickard court? Does that exacerbate it? Does it change the calculus in any way? I think it does, Your Honor, because at that point there could have been no response to anything that the PCRA 2 court might have said. At that point, the issue is still open for dispute, and I think it's reasonable to expect somebody who is about to, in a sense, go out of court to raise an objection, particularly where there's applicable case law on point that would indicate that he could proceed with PCRA 2 here. That is, I think, certainly reasonable expectation. My colleagues around me, let me jump ahead a little bit in the analysis and ask you to talk with me, us, for a moment about the various pieces of new evidence that were brought forward, almost all of which, in some way or another, undermine Bowen's, the chief witness for the Commonwealth's testimony in one way or another. Is it legally proper to view those matters cumulatively? In your briefing, you seem to kind of take one at a time and say, well, this one wasn't good enough, and that one wasn't good enough, and the district court acknowledged that those two things wouldn't have been enough. But we're presented with the whole plate full of them. Is it appropriate to look at the whole plate and say, well, all together, maybe enough? Well, Your Honor, there's actually an issue that I wrestled with somewhat when I was writing my brief. I looked repeatedly at the cases, I think Shelfers and Meadow, for the type and quality of evidence that was required, and I'm not sure that any of those items individually have lasted that level of quality or that level of reliability. And given that fact, I read the cases to sort of hold that to be the initial hurdle. Is that to say that we cannot quantify all of them and look at them together? Perhaps I misapprehend Judge Juden's question. No, you don't. I'm not asking about individually. I understand your position on that. I'm trying to get you to go beyond the point you made in your briefing, which is individually you don't think they're good enough. I'm asking whether, as a matter of law, we're permitted and perhaps even required to say what's the cumulative effect of these things. In fact, when you read in cases like House that we're supposed to look at the evidence collectively, old and new, and get a holistic approach, does that not mean we're obligated to look at it all together? I think that you would look at it all together, Your Honor, provided that the evidence sort of met that quality benchmark. That was the way I read the cases, if Your Honor's interpretation differs. I'm just trying to dry out now. When you say that quality benchmark, I'm assuming you're referring to the language from Schlup. The Schlup language, correct Your Honor, is scopically scientific evidence, you're not allowing it as testimony or critical fiscal evidence. And I don't think that anything we've seen in this case rises to that level. How about the police report of the conversation with the deputy coroner? Here's a police report with the deputy coroner in which there's a statement made that the intercourse, the first intercourse could not have happened the way described by Bowen because it happened 24 hours earlier. And then there's a follow-up phone call to the same effect. So you've got two separate pieces of evidence. To say that's unreliable, would we have to assume that police officers are fabricating exculpatory evidence for the defense? Well, that's actually an interesting question because sort of the wild card here was that that deputy coroner disavowed their statements. Sure. But that's years after the fact and when everybody's suddenly getting together and having all kinds of interesting memory changes. There was a tape, there wasn't a tape, holy cow, now I remember there was a tape. Oh, I could never have said that thing about the anal intercourse before because who would have said that? Not me, I was just a deputy coroner. Maybe the police officer was making up exculpatory evidence because he talked to somebody else. There's a bunch of stuff happening here which leads one to question why the minds were changed years later. But just setting that aside, at the time that the evidence was created, there's a police report from officers who clearly have no reason to be coming up with exculpatory information.  Well, I think it would be a different situation if we had a report, typically a coroner's report that says something along those lines. I'm just not sure that's not good enough. Well, the number two guy can't make the threshold. Actually, the number two guy was a doc, wasn't he? I believe that he was. The coroner, I believe, was simply a funeral director, which is not uncommon for coroners in smaller counties. You know, I think that we're looking at a different situation here. If we have a report, we have testimony from the coroner, we have something of that nature versus sort of a second-hand account of a phone call, a second-hand account to a police officer, and two of them at different times. Or do I admit that that is certainly an interesting situation? I guess I'll leave it at that. Can I return to the equitable tolling issue? And we have yet to even discuss procedural default. Would you concede that our Urchinoli and Taylor and Brinson opinions provide some support for finding what occurred here to be an appropriate basis for equitable tolling? Those are cases which I believe have been discussed by, or several of which have been discussed in the briefing here. I think there's a certain argument to be made to that effect, Your Honor. And those are cases involving parallel petitions for state relief and federal relief. Before, let me ask my colleagues, before we move on, are there any other questions on equitable tolling before we get a look at, before we inquire into procedural default? And I, in looking at this more and more and coming back to the issues in this case, counsel, I've actually wondered if we have here a procedural default at all. And I ask that based upon some language in the Superior Court opinion. And I can see that I had some real difficult calling with the Superior Court's opinion. It's lengthy. It's a hundred, more than a hundred pages. And I read it just the other day, which was not one of the high points of my week. But there is, both at page 52 of the opinion, actually page 148 of the appendix and 162 of the appendix, language, we conclude that we cannot confine our analysis only to newly acquired evidence that was timely presented. Rather, the distinction that must be made is whether a particular claim is timely and whether that claim is supported by sufficient evidence of record, no matter when that evidence was required. Because the PCRA's timing restrictions are jurisdictional, this Court lacks authority to affirm an order granting relief predicated on an untimely claim, merely because certain timely presented after-discovered evidence tends to support that claim. Conversely, however, a timely asserted claim cannot be found to be invalid simply because part of the evidence that supports the PCRA Court's ruling was submitted too late to form the basis of an entirely separate claim. In short, we cannot review the PCRA Court's rulings on a diminished record. The Superior Court goes on to decide the merits of the federal issue here, don't they? So we don't have simply a clean or discrete state procedural law or state procedural question. That has been ruled upon by Superior Court, do we? Well, I think that the Court sort of evaluated the merits of those claims in the alternative. I believe that the Superior Court concluded that it still had to reach the merits of Munchensky's Brady claim, even though some of the evidence raised might be untimely. Your Honor, that is not the way I took it. And again, I apologize for not being efficient, of course. All right, let's suppose there's some ambiguity. Let's suppose you read it one way and I read it the other. What should be the result? What's the presumption, replies he? I don't know if there's a presumption one way or the other, Your Honor. I think it sort of has to be looked at on an individual basis, I guess is the best answer I can give. How is the Superior Court's procedural ruling an independent and adequate state law grounds if state law required here that the Superior Court also consider the merits of Munchensky's Brady claims? Well, I'm not sure that state law required them to consider the merits of those claims. And I'm not sure how familiar you are with PCIA proceedings. I'm an old Pennsylvania District Attorney. Back then, it was the Post-Conviction Hearing Act, so I'm dating myself. And I'm an old Common Pleas Court judge, so I used to do this stuff a lot. Well, Your Honor, I'm sure you're aware that Pennsylvania is pretty militant about the timing of these requirements, the PCRA. And I think that the fact that the Superior Court found that Munchensky's claims were not filed within the requisite 60 days could have been sufficient to dispose of the issue right there. I think that they went on to address the issue. And I'm not entirely certain why they did this to continue to go on to actually address the merits of the claim. But I think that it was sort of a balance of service. It's a long opinion. It's a long opinion. It is a long opinion, Your Honor. It certainly is. All right, we'll have you back on rebuttal. Thank you, Your Honor. Mr. Geary? May it please the Court, no obituary for David Munchensky. So what about the point raised by Judge Shorten that your client was given an opportunity to submit something to show the judge that the judge had it wrong, and he did have it wrong, in having to put an incident on the case? You mean in July of 2000, Your Honor? Yes. That whatever Munchensky did or did not do in the handling of that situation in response to Judge Frank's post-conviction relief to judge's order was rendered moot by the fact that the Superior Court addressed all of the claims that were before this Court on their merits, as Judge Smith pointed out. How can that be? How can that be? How can it be that? I mean, I thought the Supreme Court was pretty clear in telling state courts, if you want to address the merits of a post-conviction claim, you can do that without fear of undermining your procedural bars. If you've invoked a procedural bar and you go on to address the merits, that does not undermine the effectiveness of your independent and adequate state bar. So if the Superior Court decided for whatever reason that it wanted to talk about the merits, and assuming for purposes of discussion, you may disagree with this, but assuming for purposes of discussion that what the Superior Court did on that Picker appeal is to say we're enforcing our 60-day rule and you lose, how can the fact that they addressed the merits moot the diligence issue that we've got to wrestle with on that groupal tolling front? Here's how it works. The affirmative procedural defense is procedural default. Procedural default, by definition, means that the claims were not litigated on their merits in state court. So because the Superior Court chose and, in fact, undisputedly addressed and resolved the merits on federal law grounds, an interpretation of federal law grounds, that deprives the Attorney General's Office of coming in and saying those claims were procedurally defaulted in state court. It's because, by definition, because they were heard and litigated on their merits, there could be no procedural default. Why don't you just chuck Supreme Court authority that says it's okay for you to deal with things in the alternative? I don't know exactly what you're referring to when you say the Supreme Court. The Supreme Court of the United States, I thought, had said, and I'll have to find the case site for you, but I thought the Supreme Court of the United States has said if you've got a procedural bar in state court and you invoke it, that's good enough. If you want to address the merits, knock yourself out. But it does not mean that your procedural default analysis becomes something less than a procedural default. I don't know what case or directive you're referring to, Your Honor. I can speak to that if you want to point that out to me. But the point is, the Attorney General's, the two main arguments is, does equitable employment apply? And then secondly, procedural default. Those two issues are out the window because the Superior Court decided. They observed there was some possible procedural infirmity with what Moshinsky, how he handled the situation in July of 2000. But then they chose to reach the merits, and in their opinion, it's at page 15. Before addressing the merits of this appeal, it's at their opinion at page 33. After careful consideration, we conclude that any procedural impropriety stemming from the presenter in court's action does not affect the jurisdiction of this court to address the merits of the present appeal. Also at page 41, we now proceed to address the substantive claims you raised on the appeal. Okay, let me ask you. This is from Harris v. Reed, a 1989 Supreme Court case. Quote, a state court need not fear reaching the merits of a federal claim in an alternative holding. By definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment. Such as a procedural ruling, even when the state court relies on federal law. That's from note 10. Now, if I'm correct that that's what that opinion says, is there something left of the argument you just made? I mean, I understood the argument you just made to be, hey, they went on and talked about the merits, so who cares whether there was a procedural default. But if they're entitled to talk about the merits, as the Supreme Court in Harris v. Reed seems to say, without undermining the procedural bar, is there something left of the argument you just made? Well, the two concepts are mutually exclusive. Procedural default and a decision resting on interpretation of federal law. So I don't see how it would be fair to any petitioner for the court or the attorney general of the Commonwealth to invoke both. The Superior Court did not decline to hear the merits invoking a federally enforced state procedural rule. They did not do that. It doesn't in effect happen all the time, and it doesn't constitute the waiver that you're saying. Courts all the time say, we find party X's position is technically barred or is procedurally barred or has some other defect of a technical nature. Nevertheless, in the alternative, we will consider the merits, and we find that party X loses on that alternative ground. That doesn't mean that the first ground is somehow waived, or it normally doesn't. Their decision, not necessarily, but the crux is, what did their decision rest upon? And in truth and in reality, their decision to deny Muncheski relief and to reverse what the Peace Area 3 Court did was not on a state procedural rule. That's why their opinion is 119 pages. They went through and they examined every, all, roughly 12 pieces of exculpatory evidence, and they interpreted Brady v. Maryland and his progeny 12 times as to each piece of evidence. And so it cannot, by this panel, cannot fairly be said that the Superior Court's opinion of December 14, 2005 rested on state procedural law. It didn't. It rested on substantive federal Brady v. Maryland law. So are you suggesting that when the state Superior Court, the Commonwealth Superior Court, had said it couldn't conclude that any claim was timely asserted, and therefore that the Pickford Court lacked jurisdiction on the merits of those claims, that that just didn't happen? I mean, that's in the opinion, right? It's in the opinion, but their decision didn't rest upon that. That was an observation that they made. Let me ask you this. As a matter of Commonwealth law, if they had decided to stop speaking at that point, period, full stop, would that not have ended the case? That appeal would have been over at that point, right? I agree. The Superior Court chose to write a one-page opinion and said, he complies with state procedural law, goodbye, and that's the procedural default. Now, we do have plenty of law in our circuit that says that this particular rule that they rely on, I can't remember the state rule, that 60-day rule, is an independent and adequate state ground, has been treated that way for 15-plus years now, right? Well, actually, for purposes that are hypothetical, I'll say yes. Okay, I'll take it. So, if that's the case, if that's the case, I guess I'm wondering why we would not go ahead and, or why we would say, well, that isn't really what they were resting on. Why do you believe that just because there's more paper to deal with the merits, that that's what they were really resting on, and their procedural statement was an observation, not a ruling of law that requires attention from this Court? Because I've read the opinion many, many times, and a fair, reasonable reading of it conclusively establishes, I submit, that their decision rested on not a state procedural rule, but on their interpretation of federal Brady law. And if they were in a court, they could have done anything they wanted, and if they wanted to prove this on procedural grounds, they could have done so. I think an absolute fair reading is they did merely observe that there may have been some procedural infirmities. But when they chose to address these federal, these claims on their federal law grounds, that has consequences to the petitioner. And the petitioner is the appointed petitioner, where the government cannot then invoke procedural default. As to whether the rule was fairly reasonably applied for years, that is not correct. Common law forces it back, which I cited. Pennsylvania Supreme Court, common law forces it back. Have we reached a point where the difference here really focuses on whether the adequacy and independence of the possible state law ground is clear from the face of the state court opinion? Is that really the debate that's going on right now? You mean in this moment here? In this argument, yes. Well, if we shift to that, you've referred to how many times you've read the opinion. Judge Jordan's questions are skeptical on that point. Is that where we are right now as to just how clear it is from the face of the opinion? I ask that because the Coleman versus Thompson language refers to the adequacy and independence of any possible state law ground being or not being clear from the face of the opinion. And for purposes of whether or not the presumption I referred to when I was inquiring of your adversary should be invoked, the presumption against procedural default. The rule, if we now shift to whether the rule is adequately independent. It was not adequate. And that's for the Pennsylvania Supreme Court, common law forces it back. The Supreme Court of Pennsylvania itself said that it itself, the Supreme Court of Pennsylvania and Pennsylvania Superior Courts in Bennett, had for years not fairly and even-handedly applied the 60-day after-discovered-evidence exception of Title 42-9545. That's Commonwealth versus Bennett. So Commonwealth versus Bennett is the proof that the state procedural rule that the Superior Court has posited did they really rely on that was not adequate. They're not independent. It's not adequate because by the Supreme Court of Pennsylvania itself, it wasn't fairly and even-handedly applied, and that's Commonwealth versus Bennett. Let me, if I could, move to a different topic. Let's assume that you got past the equitable polling problem, and you got past it for the reasons described by the district court, which you obviously supported. And then for the same reasons, you were able to say we have cause, cause for any default that might have occurred. And the prejudice is inherent in the Brady violations themselves, which are, at this juncture at least, conceded by the Commonwealth. Does that get you all the way home, or do you still have to cross the threshold set up by the second and successive petition hurdle in AEDBA? Well, the Attorney General takes the position that Schlupp sets forth a standard that Schlupp really didn't set forth. Schlupp used the words new reliable evidence. New meaning new to the petitioner, new to the proceedings. The jury didn't know about it. New and reliable. And so the Attorney General has mischaracterized Schlupp and is suggesting that there's this heightened standard of quality of evidence that the petitioner has to have. Well, look, the language of Schlupp is new, reliable, etc. But setting that aside, looking at the standard that's set by, in the statute, in AEDBA itself, you have to show that you have this newly acquired evidence and that it is such that it's clear and convincing that no rational juror could have convicted in light of the new stuff that you want to put on the table. I mean, first let me just ask, you agree that even if you get past other things, because you're at the second and successive petition stage, you've got to cross that hurdle too, right? Yes. Okay. So your opposing counsel has, in their briefing, gone through and pointed out specific things as to each of the pieces of allegedly new evidence. They've said that the state is, and I wish I had the numerous different names at the tip of my tongue for the 7 to 11 new pieces of evidence. But they point out these are hearsay statements, they're in certain circumstances recanted by people, that there would be serious admissibility issues with these things. What's your best pitch for why these things cross a clear and convincing evidence threshold such that no rational juror, looking at this and all the rest of the evidence in the case, including four witnesses who testified to confession by your client, would convict? Thank you. On the Bates report alone, Trooper George Bates, his report where he interviewed Mary Casilla establishes that the star witness and getaway driver who reported eyewitness to the crimes wasn't alone on the night of the murders and not even in the state's counsel building. Mary Casilla states in her report that she took part in the Greyhound bus station on December 1st, 1977. But does she say 1977? I thought that was open. That was a question. There was some question about the year. No? It's not. With all due respect, I don't think it was open as to the year. This was March of 78 because there was a benchmark for Bowen. Trooper Bates goes down to Oklahoma looking for him. She says, I took my sister to the Greyhound station on the 13th of December and I took Bowen on the 1st. So Bowen, by that report, was put out of the state of Pennsylvania on December 1st. The murders happened on December 2nd. So, on that piece of evidence alone, that puts their eyewitness in another state. And so, Schlupp versus Dillow is their only eyewitness. Their only eyewitness in another state, right? Correct. The whole case, since I was speaking with Senator Richard Bowen, period. They did have a confession to four witnesses. A confession, right. At least three times over, out of the mouths of four different witnesses. Except, one of those people was the wife of Mike Herzig. Her name was Dalman. Sure. Who was a suspect and he confessed in another piece of evidence. You're making the arguments which we hear from the other side about your evidence. Which is, look, these are people who, the ones we know about, we don't know very much about the woman you just described from the Bates report. Because there's just not anything in the record to tell us about her. Except this police report where she was interviewed in connection with some different investigation. But, where we do have a little information, these are people of some suspect veracity. Motives to lie, right? I mean, they're saying it about your witness, you're saying it about their witness. Under those circumstances, what are we going to do with Schlupp versus Dillow saying it's got to be reliable testimony? Well, the petitioner, it's not a dispute that this evidence was intentionally withheld by prosecutors. No question that this is, so the Brady stuff, it's conceded that there was bad stuff going on. We're just now trying to talk about what's the quality evidence that you would have had had they not done bad things. And does it meet the standard of clear and convincing that the AEDPA statute lays heavily on your client's shoulders? Well, when Trooper Bates interviewed Mary Casilla, and she gave the content of that report, that Bone was staying with his father in Oakland, D.C., Oklahoma, at some such address, it's on record in this case that Bates went there and that's where Bone was. So she gave reliable information in that instance. I mean, I guess theoretically we could sit back and pick apart every piece of evidence that prosecutors hid and say, well, would the jury really have been that swayed by that witness or this information? See, that's what you have to do, right? Isn't that exactly the responsibility that the court has? Yes. But my position is that a police report that stays by Mary Casilla, who gave details that were corroborated, that report is as reliable as is necessary for the grant of relief to be affirmed. This isn't fifth-hand information. I mean, everything is technically hearsay, but it's told to a police officer, it's a police report, it's hearsay. She told a police officer, and you either got Bone or heard good info. So that piece of information is reliable. To say, well, it's not reliable, I don't think that would be intellectually honest. And then the other pieces of evidence, a confession by Mike Erzick, who was a suspect, in great detail, this Peruvian coke, and was a drug deal gone bad, and how he and Will Trout, there's great detail and specificity in that confession by him to Elizabeth Carbone on a report by Corporal Mangiacorn. That was hidden from Lynchinsky also. So, Erzick was a suspect, and then we have this confession to his then-girlfriend, with all these details that would be hard to make up. I think that piece of evidence is as reliable as can fairly be concluded. I understand what you're saying, Your Honor. I'm just asking questions. Sure. I understand. But again, Lynchinsky is only in the position of filing a second and successive petition, because the government has hid this evidence from him from 1982 until he got it in early 2000. Actually, I think the Commonwealth would say no, he's filing a second and successive petition, in part because he was unable or unwilling to do the things he should have done to preserve his rights to start with. I understand that his first habeas petition was premature. He should have pursued his stuff in state court. He didn't preserve his rights. But leaving all that aside, I would like you to address one thing that you said in your supplemental briefing, and which you sort of touched on here. You say on the first page, quote, the misconduct included the intentional withholding of exculpatory evidence, tampering with police reports, the destruction of exculpatory evidence. If this case does not qualify for equitable tolling, no case in America would, unquote. And I want to ask you to respond to whether that doesn't miss what we have to look at. We're supposed to look at whether, regardless of the merit of the defaulted claims, whatever they may be, we have to look at the diligence of the petitioner and the character of the obstacles to his filing timely, right? No matter how bad the behavior of the common law is. Correct. Okay. So if we look at that and we were to say it doesn't look like diligence to us, would you have an avenue to win still? Yes, because it's in the alternative, cause or default, or a fundamental miscarriage of justice. Don't you have to look at cause and default first? The Druckee case seems to say that now. Does it seem to or does it say it? It does say it, in my opinion. So the magistrate judge got the order wrong in which she went through her analysis. No, it was wrong as to what procedural default. I know she did err when she found that there was procedural default, but she nevertheless went on pages 34 through 39 of her opinion. She addressed and found numerous reasons why how Monshinsky handled that situation in July of 2000, how he handled it was unreasonable. And due to a confusion in the state of the law, she selects the Sluster case. That's not what I was asking. I'm sorry. But unless I missed something in her opinion to me, if she's right there was procedural default, she never definitively addressed the cause for the default, et cetera. She went straight to the alternative that the Supreme Court says she would second. I don't know if she went straight to it. She did discuss for five, six pages there, pages 34 through 39 of her trial court opinion. And she gave at least three grounds for why what happened there. Assuming she addressed it, do you think we should address it, or should we remain it to her to address it? I think that this court should conclude that the Superior Court heard all the claims on the merits. Because if that's so, you don't even have to reach equitable trial. I understand that argument. But assuming you don't agree on that because of the language, it's really quite strong the language that Judge Sherman was reading to you before. But anyway, assuming that, what do we do? Well, my research is that cause and prejudice are factual questions. And the way the district court, the lower court handled it there, I think that this now would be obligated to remand, to have an evidentiary hearing, to make factual determinations as to cause and prejudice. I do not think that cause and prejudice is a matter of law. I think it's a factual determination, and there would have to be a remand for an evidentiary hearing. What new evidence would bear on that issue? Machinsky testified that he did ask and instruct his lawyer, John Cupp, at the time. Two of your friends. Even if that were true, let's assume that were true. We've got cases, real recent cases, Holland among them, that seem to say garden variety attorney negligence doesn't cut it. I agree. However, Machinsky would testify that Cupp abandoned him. That is why, that's what he would testify to, because that's why Machinsky filed his first petition in May of 2000, pro se. He was in touch, trying to get in touch with Cupp, and Cupp just ignored him. So Machinsky filed his first petition in May of 2000, he filed pro se. Why pro se? He didn't want to do a pro se because his lawyer ignored him. Then Judge Frank says, wait a minute, this is a hybrid petition. You have counsel on it. You have to file this with counsel. So he sent it to Cupp, and Cupp just stamped it with just a stamp and sent it in. So there were definitely issues between Machinsky and his then lawyer, Cupp. So this was remanded for a cause of prejudice factual hearing. Machinsky would testify, as to what I just stated, that Cupp abandoned him. That's not from any recent reading of these newer cases down in Biking. Machinsky told me that when he hired me in the fall of 2001. Would there be any other evidence that would be presented, any evidence you're hearing on remand? I still have some questions still about exactly when Machinsky discovered various items of evidence. Certain assumptions were made, but there isn't anything definitive in the way of a factual finding as to exactly when he discovered particular items of evidence, is it? There's a question now, although I don't believe it's dispositive, because, and again, I don't mean to repeat myself, but if you deem that the Superior Court addressed these claims on their merits by jokingly federal grade law, all of them, then that renders me, well, when did they get the evidence? They themselves said, oh, oh, oh. Set that aside, because we have your argument on that point, and respond to the specific point, if you're wrong about that, that Judge Rakoff is putting to you. I suppose, yes, that would be another issue that would have to be flushed out factually as to when precisely he did obtain these pieces of exculpatory evidence. Thank you, Mr. Geary. Do we have a rebuttal from the Commonwealth? Thank you, Your Honor. Just a few points that I'd like to address, some of the issues that my opponent raised. I think that the district court did clearly find from what she said he had procedurally defaulted his claims. It's on page 42 of the district court's opinion. Also on page 42 of that same opinion, the district court recognizes that the courts of this circuit have long viewed Pennsylvania's 60-day PCOA filing requirement as a clearly established and consistently applied purpose as a federal agency petition. I think the district court was correct in that, and I don't think there's really any grounds for dispute that that's an acceptable basis on which the state court could amend its ruling. If we get past that, we still have to deal with actual innocence, right? So if you wouldn't mind taking a few minutes to talk about the evidence the way Mr. Geary did. He says the base report has a disinterested woman giving a statement about Bowen not even being in the state. So why wouldn't we look at that and say, wow, no reasonable juror could look at that and convict Bowen? Well, there's certainly some interesting things to look at, and I could see that point, that there were some interesting things they said. But where's the follow-up? Whereas Ms. Casino, has she testified? Do we have any affidavits from her? A lot of this stuff is sort of pointing in a direction, but that direction was never followed, so to speak. These things have not been developed. How much of an obligation does the petitioner have in that regard? Is it not pretty reliable stuff to say, we don't have an affidavit from Ms. Casino? We've got the commonwealth's own law enforcement officers telling you that she said he's not in, and they followed up on it, and sure enough, what she told them, what they could verify was accurate. Why isn't that good enough? I think that there is some dispute as to whether Mr. Bowen left Pennsylvania when he went to Oklahoma. There's no dispute he was in Oklahoma, just a question of when that was and when he left. And you're talking about a matter of 24 to 36 hours, somewhere in there. Clearly, plenty of room. I thought it happened on Wednesday. It was actually Tuesday, or I think it was actually Friday, whatever the case may be. Given sort of the close call nature, so to speak, of this evidence, there's nothing conclusive that actually establishes that this information from Ms. Casino is accurate. It's basically more her, I don't want to say it was a definitive recollection, just more vague recollection on her part. I mean, that was the way I took it. I don't think that there's been anything definitive that we've obtained about Mr. Bowen's whereabouts on that particular night. And certainly, that may be a fruitful item for investigation, but at this point as we sit here today, we don't have anything that would conclusively answer that question. And I think it is noteworthy that Mr. Cupp did file a petition on Mr. Menchinsky's behalf. How he went about doing that, I mean, the fact remains that he did file it and it was filed. And even to the point where the Peace Area Court erred in dismissing it, the fact remains that it was filed. And I think Judge Roycoff raised an interesting point about the time of discovery of this evidence, which actually under the PCRA is a very critical element. A petition is required to include the specificity when he discovered this new evidence, and Mr. Menchinsky has never done that. The district court was compelled to use July 27th of the year 2000, I believe, as sort of the de facto date of discovery, just because there was no specificity of any other date. And under the Pennsylvania standards of the PCRA, that's not acceptable. Mr. Menchinsky needs to say, I just discovered item A on May 14th, 2000. I discovered item B on June 6th, 2000. And he gave that level of specificity, which he never did, which I think is also indicative of a lack of diligence on his part, and really a lack of cause to excuse his procedural default. With that, Your Honor, I have nothing further. If there are no additional questions, I will yield back the remainder of my time. Thank you very much. Thank you, Your Honor. Thank you very much to both of the counsel for your very helpful arguments. I would ask that we have a transcript prepared of this argument for use by the panel. And with that said, we will stand and recess.